# In the United States Court of Federal Claims

No. 14-549C

(Filed: March 26, 2019)

|  |  |
|---|---|
| ULTIMATE CONCRETE, LLC, <br><br> Plaintiff, <br><br> v. <br><br> THE UNITED STATES OF AMERICA, <br><br> Defendant. | Keywords: Contract Disputes Act ("CDA"), 41 U.S.C. § 7104; Contract Interpretation; Motion for Reconsideration; RCFC 59(a). |

*Thomas M. Keranen*, Clark Hill PLC, Detroit, Michigan, for Plaintiff, with whom was *Jeffrey M. Gallant*, Clark Hill PLC.

*James W. Poirier*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, Washington, D.C., for Defendant, with whom were *Claudia Burke*, Assistant Director, *Robert E. Kirschman, Jr.*, Director, and *Joseph H. Hunt*, Assistant Attorney General.

## OPINION AND ORDER

**KAPLAN, Judge.**

Plaintiff Ultimate Concrete, LLC ("UC") has moved for reconsideration of the Court's January 10, 2019 Opinion and Order (ECF No. 139), in which the Court granted-in-part and denied-in-part UC's motion for summary judgment as to certain of its claims in this action brought pursuant to the Contract Disputes Act, 41 U.S.C. § 7104 ("CDA"). For the reasons discussed below, UC's motion is **DENIED**.

## BACKGROUND

The Court previously set forth the facts of this case in its January 10 opinion. See Ultimate Concrete, LLC v. United States, 141 Fed. Cl. 463, 466–473 (2019) ("Ultimate Concrete I"). It therefore presumes familiarity with the case and provides only a brief factual overview below. The Court will focus exclusively on UC's "REA 7-8-9" claim, which is the sole claim at issue in UC's motion for reconsideration.

This case concerns a contract dispute between UC and the United States Section of the International Boundary and Water Commission ("IBWC"). In 2010, UC and IBWC entered into

a contract under which UC was to "rehabilitate, renovate, and perform new construction on an existing levee on the Rio Grande River." Id. at 465–66. The disputed question at issue in this motion for reconsideration is whether an amendment to the solicitation allowed UC to leave in place preexisting clay material placed on the levee by IBWC in-house crews in 2009 ("the 2009 clay").

It is undisputed that the original specifications and drawings required the contractor to excavate the 2009 clay. Id. at 476. About one week before bids were due, IBWC issued an amended solicitation. Id. at 468. Among other changes, having received several questions about the 2009 clay—including its quality and quantity—IBWC added language to the solicitation specifications stating, in pertinent part: "Approximately 232,300 tons of impervious material has been placed on the levee and may be suitable embankment at the contractor's discretion." Id. UC interpreted this sentence to mean that it had the option of leaving the 2009 clay in place on the levee. Id. at 468–69. Based on this assumption, UC significantly revised its price downward immediately before submitting its bid. Id. at 469.

UC won the contract because it submitted the lowest bid. Id. As contract performance progressed, however, it became clear that UC and IBWC disagreed as to whether UC was required to excavate the 2009 clay or could permissibly leave it in place. According to the government, the language stating that the subject clay material "may be suitable embankment at the contractor's discretion" meant that the contractor had the option to reuse the clay material by placing it back on the levee in the process of rebuilding the structure after the required excavation. Therefore, IBWC ordered UC to excavate the clay despite UC's protests. Id. at 469–70. UC complied with IBWC's instructions, tracking all costs for what it perceived to be out-of-scope work. Id. at 470. UC later submitted a certified claim to the contracting officer and ultimately filed the present lawsuit, requesting an equitable adjustment in the amount of $10,354,216.06. Id. at 472. UC labeled this claim its "REA 7-8-9 claim" because it concerned a request for equitable adjustment ("REA") on Typical Sections 7, 8, and 9 of the levee as denoted on the solicitation drawings.

In Ultimate Concrete I, the Court considered the arguments of the parties in their respective motions for summary judgment and found UC's interpretation of the contract unreasonable. Id. at 474–79. Conversely, the Court concluded that the government's interpretation was reasonable as a matter of law. Id. Accordingly, the excavation of the 2009 clay fell within the scope of the contract and UC was not entitled to an equitable adjustment. The Court denied UC's motion for summary judgment as to its REA 7-8-9 claim and granted the government's motion on the same claim. Id. at 482.

UC has now moved for reconsideration of this part of the Court's ruling. For the reasons set forth below, UC's motion for reconsideration is denied.

## DISCUSSION

**I.     Standard for Granting a Motion for Reconsideration**

Under Rule 59(a) of the Rules of the Court of Federal Claims, the Court may grant a motion for reconsideration "(A) for any reason for which a new trial has heretofore been granted

in an action at law in federal court; (B) for any reason for which a rehearing has heretofore been granted in a suit in equity in federal court; or (C) upon the showing of satisfactory evidence, cumulative or otherwise, that any fraud, wrong, or injustice has been done to the United States."

To meet this standard, a party generally must demonstrate that the court has committed a "manifest error of law[] or mistake of fact." Johnson v. United States, 126 Fed. Cl. 558, 560 (2016) (quoting Bishop v. United States, 26 Cl. Ct. 281, 286 (1992)). "[O]rdinarily" the moving party "must show either that an intervening change in controlling law has occurred, evidence not previously available has become available, or that [granting] the motion is necessary to prevent manifest injustice." CBS Corp. v. United States, 75 Fed. Cl. 498, 501 (2007) (quotation omitted); see also Johnson, 126 Fed. Cl. at 560. Whether to grant reconsideration lies within the sound discretion of the court. See Yuba Nat. Res., Inc. v. United States, 904 F.2d 1577, 1583 (Fed. Cir. 1990). Because the standard for reconsideration is a high one, the court should not grant the motion unless the party has made "a showing of extraordinary circumstances which justify relief." Biery v. United States, 818 F.3d 704, 711 (Fed. Cir. 2016) (quoting Caldwell v. United States, 391 F.3d 1226, 1235 (Fed. Cir. 2004)), cert. denied, 137 S. Ct. 389 (Mem.) (2016).

## II. UC's Motion

In its motion for reconsideration, UC does not argue that there has been an intervening change in controlling law or that previously unavailable evidence has become available. Its motion is predicated on an argument that the Court committed an error of law when, rather than applying what UC calls the "reasonable bidder" or "reasonable contractor" standard, it required UC to demonstrate that its interpretation of the contract was "correct." Quoting Renda Marine, Inc. v. United States, 66 Fed. Cl. 639, 652 (Fed. Cl. 2005), UC observes that "a contractor 'does not bear the burden of interpreting [the] contract [documents] correctly, only of interpreting [them] reasonably.'" Pl.'s Mot. for Reconsideration ("Pl.'s Mot.") at 3, ECF No. 142 (alterations in original). UC's argument lacks merit.

First and foremost, UC has mischaracterized the legal standard the Court applied when it entered summary judgment as to the REA 7-8-9 claim. The Court examined the language upon which UC relied and determined its meaning on the basis of well-established principles of contractual interpretation. It explicitly ruled that the government's reading of the contract was a reasonable one but that UC's was not. See Ultimate Concrete I, 141 Fed. Cl. at 474 ("[T]he Court concludes that UC's interpretation of . . . the contract is not reasonable."); id. at 475 ("UC's interpretation of the contract is unreasonable.") (capitalization altered). And, because it found the government's interpretation (but not UC's) consistent with the language of the contract, it declined to allow UC to rely upon extrinsic evidence "to create an ambiguity" that otherwise did not exist. See City of Tacoma, Dep't of Pub. Utils. v. United States, 31 F.3d 1130, 1134 (Fed. Cir. 1994).

Thus, as noted above, the issue before the Court was the proper interpretation of a sentence that had been added to one of the specifications by an amendment to the solicitation. The Court held that the government's interpretation of the operative sentence comported with the its language and also harmonized it with the rest of the contract. On the other hand, the Court found UC's reading of the sentence unreasonable because, among other reasons: 1) it could not be reconciled with the specifications and drawings governing the construction of the levee,

3

which required the contractor to excavate down to benching lines that were below the clay material on the existing embankment; 2) it ignored that the subject of the sentence in question was the "232,300 tons of impervious [clay] material" that had been placed on the levee; and 3) it was grammatically unsustainable (because if the word "embankment" were intended to be used as a noun, then it would have been preceded by an article). The Court also rejected as unsupported by the record an argument UC repeats here, that the phrase "suitable embankment" has a specialized meaning to persons experienced in the construction of levees.

"[A] motion for reconsideration is not a forum in which a losing party may re-argue its case." Prati v. United States, 82 Fed. Cl. 373, 377 (2008). Yet UC's motion for reconsideration largely repeats and/or repackages points that it made in its motion for summary judgment and which the Court has already carefully considered and rejected as described above.

The Court declines to revisit these repeated and repackaged arguments but notes that UC does not engage with, or even acknowledge, the primary principle upon which the Court relied in its summary judgment decision, which is that a contract "must be considered as a whole and interpreted so as to harmonize and give reasonable meaning to all of its parts." Coast Fed. Bank, FSB v. United States, 323 F.3d 1035, 1038 (Fed. Cir. 2003) (citing McAbee Constr., Inc. v. United States, 97 F.3d 1431, 1435 (Fed. Cir. 1996)). Nor does UC come to terms with the Court's textual analysis of the operative sentence itself, which supports the government's interpretation and refutes UC's.

The Court also notes that it is not persuaded by UC's argument that in deciding whether its reading of the contract was reasonable, the Court should have given consideration to "the circumstances of the bidding process," specifically that UC had "limited time to review" the revisions that were made to the solicitation shortly before bids were due. Pl.'s Mot. at 11. As the court observed in Renda Marine, "a government contractor, regardless of its size, locality, or experience, is obligated to understand the complexities and consequences of its undertaking . . . and to study all aspects of the contract before submitting its bid." 66 Fed. Cl. at 655 (internal citations, quotations, and alterations omitted); see also Giesler v. United States, 232 F.3d 864, 870 (Fed. Cir. 2000) (holding that it is incumbent upon contractors to "read and consider the specifications thoroughly") (quoting Liebherr Crane Corp. v. United States, 810 F.2d 1153, 1157 (Fed. Cir. 1987)); see also R.B. Wright Constr. Co. v. United States, 919 F.2d 1569, 1572 (Fed. Cir. 1990) (quoting and applying same proposition from Liebherr).

Magnus Pacific Corp. v. United States ("Magnus"), the primary case on which UC relies for a contrary proposition, is inapposite. See generally 133 Fed. Cl. 640 (2017). In that case, shortly before bids were due on a levee reconstruction project, "the entire set of specifications for the project was revised and fully replaced" and IBWC provided answers to bidder questions that "encompassed fundamental changes to the project and revised or replaced contract language." Id. at 649. Expert testimony submitted by the plaintiff and credited by the court showed that "the solicitation lacked essential data" and that "the levee design set forth in the plans and specifications did not reflect the conditions on the existing levee." Id. The court agreed with the plaintiff's expert "that the level of error and missing information in the solicitation documents, and the sweeping last minute changes to the solicitation that were made during the bidding process, were problematic." Id.

4

The Court disagrees with UC's contention that the facts in Magnus were "very similar to those here." Pl.'s Mot. at 11. As the Court noted in its original opinion, the new provision on which UC relies did not implement "sweeping changes"; it merely clarified existing requirements in response to certain written questions submitted by other offerors after a site visit.[1] It is only when the provision is given the unreasonable reading UC proposes that it results in a significant change to existing requirements.

Further, in Magnus, the issue to which the court found the last-minute changes relevant was not whether the plaintiff had proffered a reasonable interpretation of the contract. Rather, it was whether—for purposes of the plaintiff's defective specifications claim—the defects were "patent" or "latent" ones. 133 Fed. Cl. at 692. Resolution of that issue was dependent on questions of fact, including the obviousness of the defects in the solicitation—i.e., whether there were "facial discrepancies that a bidder noticed or should have noticed." Id. In that context, the court found as a matter of fact that "given the analytical effort required to discern th[e] particular defect in the solicitation, particularly in light of the time constraints, the inconsistency [at issue] was a hidden defect that would not be discovered upon facial inspection or through reasonable and customary care." Id. at 693.

The REA 7-8-9 claim is not a defective specifications claim, and the issue presently before the Court does not involve whether such a defect existed or whether it was a latent or patent one. The issue before the Court is the interpretation of one of the terms of the contract, which involves a question of law. The Magnus decision therefore does not support UC's argument that the Court should have taken into account the amount of time UC had to submit its bid when assessing the reasonableness of UC's interpretation of the contract.

## CONCLUSION

For the foregoing reasons, UC has not demonstrated that the Court committed a manifest error of law or fact in its previous opinion and order. Therefore, UC's motion for reconsideration is **DENIED**.

---

[1] In that regard, UC repeats its contention that the disputed language in the addendum was added in response to a question posed during the site inspection asking if the existing embankment could be left in place. Pl.'s Mot. at 5. As the Court previously observed, the pre-bid meeting minutes stated that questions "must be submitted in writing" and "verbal answers to question[s] [were] not binding." Ultimate Concrete I, 141 Fed. Cl. at 467–68. Further, "there were no written questions submitted about whether the embankment that had been rehabilitated the preceding year by the in-house crews could be left in place." Id. at 467. Rather, the Court observed, the written questions concerned the quality and amount of clay material used to build the existing embankment that would be available for salvage, which was consistent with the government's interpretation of the operative sentence in the amended solicitation. Id.

**IT IS SO ORDERED.**

s/ Elaine D. Kaplan
ELAINE D. KAPLAN
Judge